**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **FIRED UP, INC.** | § | **CASE NO. 14-10447** |
| | § | **(Chapter 11)** |
| **DEBTOR**[1] | § | |

**DEBTOR'S EMERGENCY MOTION TO AUTHORIZE MAINTENANCE OF CERTAIN PREPETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW **Fired Up, Inc.** ("Debtor" or "Fired Up"), Debtor and Debtor-in-Possession in the above styled and referenced case files this its *Emergency Motion to Authorize Maintenance of Certain Prepetition Bank Accounts and Cash Management System* ("Motion"), and in support thereof would respectfully show the Court as follows:

**JURISDICTION AND PROCEDURAL BACKGROUND**

1.       On March 27, 2014 (the "Petition Date"), Debtor  filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court"), thereby commencing this chapter 11 case ("Case").  The Debtor continues in possession of its property and it is operating and managing its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

---

[1] Until February 26, 2014, Debtor's business was being operated partially by the Debtor and partially by its two wholly owned subsidiaries, Kona Restaurant Group, Inc. and Carino's Italian Kitchen, Inc..  Those entities were merged into the Debtor on that date.

2.      No trustee or examiner has been appointed in the Debtor's Chapter 11 Case, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Debtor is operating and managing its business as debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

5.      The Motion itself is grounded in, *inter alia,* 11 U.S.C. §§ 105(a) and 366.  Fed. R. Bank. P. 6003 and 6004.

### THE DEBTOR AND ITS BUSINESS

<u>Overview</u>

6.      Fired Up, Inc. ("Fired Up") is a corporation based in Austin, Texas, which has been involved in the hospitality industry since 1997.  It currently owns and operates forty-six (46) company-owned stores ("Company Stores") known as Johnny Carino's Italian ("Carino's") in seven states (Texas, Arkansas, Colorado, Louisiana, Idaho, Kansas and Missouri) and  sixty-one (61) franchised or licensed locations in seventeen (17) states (California, Florida, Georgia, Indiana, Kentucky, Michigan, Montana, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Utah and Washington) and four other countries (Bahrain, Dubai, Egypt and Kuwait) ("Franchisees" or "Franchised Stores").  Carino's focuses on providing high quality, classic but contemporary, innovative Italian cuisine at an exceptional value in an authentic Italian atmosphere to a broad demographic from intimate "date nights" for young singles, to large family gatherings.

2

7.     Prior to 2014, the business was operated through three entities:  Fired Up, Inc. was the parent company.  Ownership of Fired Up, Inc. as of the Petition Date was:  74.77% by Creed Ford III, his wife and immediate family, 13.60%  by Abdulghani Al-Ghunaim and Al-Ghunaim Trading Co., Ltd., and the remaining 11.63% percent by approximately 180 other shareholders.  Kona Restaurant Group, Inc. ("Kona") was wholly owned by Fired Up, Inc. and was the franchisor for the Debtor's franchises and the lessee for most of the Company Store locations.  Carino's Italian Kitchen, Inc. ("CIK"), also solely owned by Fired Up, Inc., operated the Company Stores.  On February 26, 2014, after extensive consultation with its accountants, tax advisors and corporate attorneys, the three companies were merged into the Debtor, Fired Up, Inc.

8.     Fired Up currently employs approximately 2,900 persons in its restaurants and corporate headquarters.  Creed Ford III is the majority shareholder in Fired Up and also sits on its Board of Directors in addition to serving as President and as sole Chief Executive Officer since 2008.

**Company History**

9.     Creed Ford III ("Ford" or "Creed Ford") and Norman J. Abdallah formed Fired Up, Inc. in 1997 for the purpose of acquiring the Kona Restaurant Group from Brinker International, Inc. ("Brinker").  At that time, Kona operated the six-unit Johnny Carino's Italian Kitchen chain and one Kona Ranch Steakhouse.  By 2006, Fired Up had expanded the Carino's concept to 173 company-owned and franchised locations in thirty (30) states and four (4) foreign countries.

10.     By 2007, however, revenues had begun slipping and guest counts were down.  The Company's initial business strategy was to rebrand and fine tune its concept.  It began

3

recreating itself as Carino's Italian and moving away from the old Johnny Carino's brands. However, before the success of this strategy could be determined, the 2008 recession created significant additional challenges for the company. In the fiscal year ending June 25, 2008, the Company reported a net loss of $15.9 million.

11.      Creed Ford sold the Chili's franchises which another of his businesses owned and operated in order to devote his full attention to the Carino's Italian brand. In 2008, he assumed the position of CEO in addition to being chairman of the board. In January of 2011, Mr. Ford arranged the redemption for $16 million of the preferred shares of the Debtor held by Rosewood Capital, which had been an investor in the company since 2002. The redemption was financed with a loan from FRG Capital, LLC, a company owned by the Ford family. As the largest and majority shareholder, Ford did not receive any consideration for the loan to Fired Up, Inc. to redeem the Rosewood preferred shares.

12.      As a result of changes instituted by management under Ford's direction, the Company subsequently experienced several profitable years. However, by the end of the fiscal year ending June 26, 2013, the company reported a net loss of $5.9 million. It appeared that while a majority of the Company's stores were profitable, a minority of locations were consistently losing significant amounts of money. Ford instituted a comprehensive review of Fired Up's sixty-five (65) company-owned stores. From October 2013 through March 2014, the company closed a total of nineteen (19) locations which it had determined were unprofitable and likely to remain so.

**Financial Information**

13.      Fired Up's real property assets consist of the land and building out of which a Company Store operated in Abilene, Texas, and is valued at $1.6 million. The Company Store at

this location is no longer open and Fired Up is in the process of negotiating a sale of this property at a price which it believes to be fair market value. The remainder of Debtor's locations are leased. Debtor holds long-term ground leases and owns the buildings on eleven of these locations located upon each piece of real property. The Debtor has valued these buildings at $6.2 million.[2] The Debtor estimates the book value of its tangible personal property assets at approximately $7.3 million. The Debtor also holds significant intangible property, including trademarks and other intellectual property. The company estimates that it owes $17.7 million in contractual secured debt, including $13.4 million to FRG Capital, LLC, $1.9 million to GE Capital Franchise Finance Corp., $600,000 to Independent Bank of Waco and $1.2 million to Prosperity Bank. The company owes $260,000 in delinquent *ad valorem* taxes; its current *ad valorem* property tax obligations, incurred but not due, are approximately $2.2 million. Debtor has current priority obligations to employees consisting of approximately $950,000 in wages, $400,000 in accrued vacation time and $70,000 in bonuses earned and owed. The Debtor owes $1.9 million in priority tax claims. The Company's draft schedules, which are still being prepared, reflect unsecured debts of $13.8 million, but this amount very likely overstates the Debtor's actual liabilities. Major unsecured liabilities include $2.8 million owed to AEI Fund Management, Inc. with regard to two shortfall notes, $3.3 million in contingent obligations with regard to leases to be rejected, $2.2 million owed to a former vendor and $620,000 owed to Independent Bank of Waco for a loan on a surrendered ground lease. Much of the remaining amounts scheduled consist of current amounts owed to vendors and estimated tax amounts to be paid under triple net leases in the future. In terms of numbers, only a handful of priority and

---

[2] This number is based on the value of the building *with* the existing ground lease. A building has little value, if any, if its ground lease is terminated for any reason and the building belongs to the Lessor at the end of the ground lease. This valuation does not discount for these factors, which are significant.

general unsecured operating debts (*e.g.* vendors, utilities, taxes) have not been kept current and were not current at the time of filing.

14.     For the fiscal year ending June 27, 2012, the company reported total revenues of $125.7 million and net income of $614,000. Guest counts for this period totaled 8.6 million. For the fiscal year ending June 26, 2013, the company reported total revenues of $120.8 million and a net loss of $5.9 million. Guest counts equaled 8.5 million. Annualized gross sales for the Company Stores for 2014 are expected to be about approximately $103 million. As of December 31, 2013, Net Operating Cash Flow was ($2.6 million); Net Operating Cash Flow going forward, after the store closings, is estimated to be at least $300,000 per month *positive* with an increase in the profitability of each of the operating stores of at least six percent (6%). Annualized General and Administrative costs have been reduced approximately $2.5 million from 2013 to 2014.

**Reasons for Filing Bankruptcy**

15.     As discussed above, the Company began its own "out of court" reorganization in the last quarter of 2013:  it closed unprofitable restaurants, it worked with the landlords of its closed stores to find other tenants or sell particular stores or work out terminations of leases and agreed damages owed. It significantly decreased fixed expenses. It began examining programs and other marketing strategies to increase revenues. However, while most of the Company's landlords and other creditors continued in these "bad times" with the collegial working relationship they had had with the Company and Creed Ford over decades, some did not. The actual timing of the filing on March 27, 2014 was influenced by two lawsuits—one by a former vendor which was aggressively seeking unreasonable repayment terms on an outstanding amount owed when that vendor and Debtor ceased doing business and the other by a former Landlord.

16.     The general motivation behind the filing of its chapter 11 petition was to try to tie up the "loose ends" of the Company's self-imposed "reorganization" that did not appear capable of being tied up without litigation.  In particular, the provisions of the Bankruptcy Code with respect to the rejection of burdensome leases and the ability to propose and pay out its debts pursuant to a Plan without piecemeal prosecution by random uncooperative creditors undermining same were particularly attractive.

**Going Forward**

17.     Debtor's projections when it began analyzing its profitable and unprofitable stores indicated that it had the ability to immediately start showing a net operating profit immediately upon the closing of its unprofitable locations with little additional growth in revenues.  Its projections have been born out as these stores have been closed.  Based on these projections, the Company is reasonably optimistic that without the continuing obligation of the unprofitable locations, it will be able to operate on a profitable basis and to devise a plan of reorganization for repayment of its existing obligations and those created from the lease rejections.  It hopes that, with the burden of aggressive creditors continuing unrelated collection efforts, it will be able to better focus on efforts to better market itself, increase revenues and continue to cut costs.

## THE DEBTOR'S CASH MANAGEMENT SYSTEM

18.     Prior to commencing this Case, Debtor managed its cash, receivables and payables through a cash management system ("CMS") consisting of:  (i) two banks (Wells Fargo and Cap One); (ii) fifty (50) store depository accounts, one for each Company Store[3] (three at Cap One and forty-seven at Wells Fargo);  (iii) two Master Depository Accounts (one at Wells Fargo and One at Cap One); (iii) one active Master Account; and (iv) four active disbursement

---

[3] One of the "store depository accounts" at Wells Fargo is located in San Marcus for Texas State "Bob Cat Bux" meal plan card deposits.  It is being considered a store depository account for this Motion as it operates identically.

accounts (Wells Fargo AP, Wells Fargo AP ACH, Wells Fargo Payroll, and Wells Fargo Fintech ACH.  All the active accounts and one of the depository accounts were maintained at Wells Fargo ("Wells Fargo"); one Master Depository Account and two Store Depository Accounts were maintained at Cap One (collectively, the "Banks").  Debtor also maintained several other Wells Fargo accounts for stores that have recently been closed or are otherwise dormant, which are in the process of being closed.  A schedule of the afore-described accounts at these Banks (collectively "Bank Accounts") is attached hereto as Exhibit A.  The Bank Accounts and the transfer of funds from the different accounts that are part of the CMS are described below.  Debtor reserves the right to seek authorization from the Court, if necessary, to implement changes to the CMS during the pendency of the Case.

19.     Store level receipts are generated through local acceptance of cash, checks and credit cards.  Cash and checks are deposited daily into each particular store's Store Depository Accounts and "swept" nightly into Master Depository Accounts at Wells Fargo and Cap One.[4] In turn, the Master Depository Account is swept nightly into the Debtor's Master Account. Thus, at the beginning of each workday, each Store Depository Account and the Master Depository Account begin with a zero balance.

20.     Debtor's Master Account was maintained as of the Petition Date at Wells Fargo. Funds from this account are utilized to fund all obligations and disbursement accounts of the Debtor.  As of the Petition Date, Debtor paid its operating expenses and debt from four accounts— the ACH Account used for outgoing wire and other electronic transfers made by the Debtor; the Payroll Account, a general disbursement account ("A/P Account") , and the Fintech Account which is has been used for ten years by FinTech, a company which specializes in

---

[4] Credit card receipts from MasterCard, Visa, American Express, Discover and Diners for all the Company Stores are deposited daily directly into the Master Account, as defined and discussed below.

assisting restaurants and bars in paying their liquor bills within parameters set by each state in which the client operates.

21.     Debtor is filing a separate motion requesting authorization to continue to pay employees, which payroll checks will clear against the Payroll Account.   It is therefore necessary to maintain the pre-petition Payroll Account for the time reasonably necessary to allow all payroll checks outstanding as of the Petition Date to have cleared.

22.     Debtor is self-insured medical and workman's compensation insurance for its employees.   Four of the providers and/or administrators ("Claims Administrators") of these programs require Debtor to maintain a constant, fixed balance account out of which they pay claims.   As claims are paid from these "escrow" accounts, the money to reimburse each of the accounts is pulled from Debtor's ACH Account.   These four accounts and the amounts required to fund them as of the Petition Date were:

| BANK | AMOUNT | PURPOSE | ADMINISTRATOR |
|---|---|---|---|
| BVA Compass (xxxxxx908) | $20,000 | TPA Claims | Combined Group Insurance Service |
| CitiBank SAMP (xxxxx181) | $85,000 | Medical from prior plan) | Aetna Self Funded |
| Wells Fargo | $387,00 LOC (cash security) | Workmen's Comp | Traveler's |
| Bank of America (xxxx2628) | $46,000 | Self-Funded Medical Pgm | United Healthcare |
| Bank of America (xxxx2615) | $5000 | Self-Funded Flexible Spending Acct | United Health Care |

While Debtor funds these "escrow" accounts and the accounts are in its name, the particular insurance company on each of the accounts above determines the balance required in each account and has complete control over the funds and how claims are paid from it.

23.     With the exception of the "waivers" set forth and requested below, Debtor will comply with the requirements of the United States Trustee regarding the non-payment of prepetition obligations by closing the ACH, the A/P and the Fintech Accounts at Wells Fargo within forty-eight hours of the Petition Date.  New, replacement accounts for these accounts as well as a tax account will be opened at Prosperity Bank.  A new Payroll Account will also be opened at Prosperity Bank for payrolls going forward but, with the Court's permission, the current Payroll Account at Wells Fargo will remain open post-petition for thirty (30) to allow the uncleared checks as of the Petition Date to clear.

## RELIEF REQUESTED

### Waiver of Certain of the United States Trustee's Debtor in Possession Account Guidelines

24.     In order to supervise the administration of a chapter 11 case, the Office of the United States Trustee has established certain operating guidelines for Debtor's in possession. *See generally Guidelines for Debtor's in Possession*, Department of Justice, United States Trustee Program – Region 6. T hese guidelines require chapter 11 Debtors to, among other things, (a) close all existing bank accounts and open new debtor in possession accounts at approved depository banks; (b) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor in possession account for cash collateral; and (d) obtain new business checks for debtor in possession accounts which bear the designation "debtor in possession," the bankruptcy case number, and the type of account. *Guidelines for Debtor's in Possession*, Bank Accounts and Money of Estates §§ A-F.  The Debtor has agreed to modify its checks accordingly.

25.     Debtor maintains a coordinated and integrated accounting, cash management and treasury system to manage its extensive business operations, including relying on multiple

banks for local store deposits.  Debtor believes that the transition to chapter 11 will be more orderly and will minimize the disruption to their operations if it is authorized to continue its prepetition practices by its Cash Management System and maintain the Master Depository Account, the store Depository Bank Accounts, the escrow accounts during the pendency of the Case as well as the Payroll Account for sixty (60) days.  As set forth above, Debtor will immediately close its three current disbursement accounts and open new disbursement accounts and a Tax Account at Prosperity Bank, which is a banking institution on the list of those approved by the Office of the United States Trustee. Debtor's Cash Management System constitutes an ordinary course and essential business practice and provides significant benefits to the Debtor and its estate including, among other things, the ability to control corporate funds, ensure the maximum availability of funds when necessary, and reduce borrowing costs and administrative expenses by facilitating the movement of funds and by providing more timely and accurate account balance information.

26.    Additionally, as set forth in further detail in *Debtor's Motion to Authorize Payment of Pre-Petition Wages, Salaries, Bonuses, Reimbursable Employee Expenses and Benefits in the Ordinary Course of Business and to Establish Employee Noticing Procedures* ("Employee Wage and Benefits Motion"), Debtor is self-insured for medical and workmen's compensation insurance.  Debtor is requesting in that other Motion that it be allowed to continue the existing escrow accounts controlled by the administrators of Debtor's policies.

27.    Having to replace the current Cash Management System in its entirety would be costly and disruptive of the orderly collection of revenues by the Debtor, resulting in a significant adverse effect on the Debtor's reorganization efforts.

28.     To ensure that all transfers and transactions will be documented in its books and records, the Debtor will maintain records of all transfers within the Cash Management System. Based upon the foregoing, maintenance of the existing Cash Management System is in the best interests of the Debtor and its estate.

29.     To guard against improper transfers resulting from the post-petition honoring of prepetition obligations, Debtor requests that its banks be directed not to honor, subject to certain exceptions approved by this Court, any disbursements, including automatic or "ACH" withdrawals drawn on the Debtor's continuing bank accounts authorized, or for obligations, prior to the Petition Date, and not to honor any checks or disbursements drawn on the Disbursement Accounts while in the process of closing these accounts. Debtor will notify each of their banks not to pay any debts incurred prior to the Petition Date, subject to certain exceptions approved by this Court.

30.     The maintenance of the Cash Management System as modified herein (together with the reporting discussed above) will accomplish the dual goals of minimizing the disruption to the Debtor's operations and satisfying the United States Trustee's operating guidelines. The reporting would afford a complete accounting of the Debtor's funds and would provide the United States Trustee comfort that the spirit of the operating guidelines would be observed. Moreover, there are no concerns herein with regard to the transfer of funds between separate estates because this case involves only a single debtor.

31.     Bankruptcy courts in the Fifth Circuit have routinely granted authority for a debtor's continued use of its existing cash management procedures and policies, particularly where the entities involved form a large and complex organization. *See e.g., In re Daisytek, Incorporated*, Case No. 03-34762, Docket No. 47 (Bankr. N.D. Tex. May 12, 2003); *In re Food*

*Fast Holdings, Ltd.,* Case No. 02-10542, Docket No. 69 (Bankr. E.D. Tex. Feb. 11, 2002); *In re Mosaic Group (US) Inc.*, Case No. 02-81440, Docket No. 58 (Bankr. N.D. Tex. Dec. 26, 2002); *In re Highland Health Services, Inc.,* Case No. 01-35491, Docket No. 119 (Bankr. S.D. Tex. June 19, 2001).

**Requirements for Bankruptcy Rule 6003(b)**

32.     Pursuant to Bankruptcy Rule 6003, this Court may grant relief regarding a motion to use property of the estate within twenty-one (21) days after the Petition Date if relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D. N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); see also FED. R. BANKR. P. 6003, Committee Notes (noting that cases applying Bankruptcy Rule 4001(b)(2) and (c)(2) may "provide guidance" for relief under Bankruptcy Rule 6003).

33.     As discussed above, the relief requested herein would minimize disruption to the Debtor's' operations.  Such disruption to the Debtor's operations and additional expense could otherwise result in immediate and irreparable harm to the Debtor's estate, given the Debtor's limited resources at this time.   Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003(b) and seeks authority to maintain its prepetition bank accounts and cash management system, with the exception of the Disbursement Accounts the Debtor is intending to close.

**Conference with the United States Trustee**

34.      Debtor met with a staff attorney at the Office of the United States Trustee for this District and Division prior to the Petition Date.  Debtor intends between this date and the date of the hearing on the instant motion to work closely with the Office of the United States Trustee to develop guidelines relating to the matters discussed herein.

**PRAYER**

The Debtor respectfully requests that the Court enter an Order authorizing the Debtor to maintain its Cash Management System and the Bank Accounts, closing only the specific Disbursement Accounts noted on Exhibit A.  The Debtor further requests that the Court grant them such other and further relief to which they may be justly entitled.

Dated:   March 27, 2014

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
1212 Guadalupe, Suite 104
Austin, Texas 78701
(512) 476-9103 Ext. 220
(512) 476-9253 Facsimile

By:      */s/ Barbara M. Barron*
Barbara M. Barron
State Bar No. 01817300
Stephen W. Sather
State Bar No. 17657520

**PROPOSED ATTORNEYS
FOR THE DEBTOR**

## **CERTIFICATE OF SERVICE**

I certify that we directed North American Credit Services, Debtor's servicing agent, to serve a copy of the foregoing by first class mail, postage prepaid and properly addressed, on March 28, 2014, to all parties listed on the attached Exhibits A and B and Service List attached to the filed copy of this Motion and electronically by the Court's ECF system to all parties registered to receive such service. Copies of the matrix are not included in service copies but may be obtained from the Clerk of the Court or Debtor's counsel.


_____/s/ Barbara M. Barron_____

**EXHIBIT A**

| ACCOUNT # | BANK NAME | ACCOUNT NAME | Purpose | LOC # | LOCATION | Notes: |
|---|---|---|---|---|---|---|
| xxxxxx1139 | Wells Fargo | Carino's Italian Kitchen, Inc.  - Master Account | Sweep/Funding Account | Corp | Austin | WF Master Account funds or sweeps corp level ZBA accounts |
| xxxxxx6637 | Wells Fargo | Carino's Italian Kitchen, Inc.- Payroll Account | Payroll/ ZBA | Corp | Austin | Funded by Master Account |
| xxxxxx6645 | Wells Fargo | Carino's Italian Kitchen, Inc.- A/P Account | Check payments to vendors/ ZBA | Corp | Austin | Funded by Master Account |
| xxxxxx4293 | Wells Fargo | Carino's Italian Kitchen, Inc.- ACH Account | ACH Payments to vendors/ ZBA | Corp | Austin | Funded by Master Account |
| xxxxxx4301 | Wells Fargo | Carino's Italian Kitchen, Inc.- Fintech Account | ACH Payments to Fintech for Alcohol purchases/ ZBA | Corp | Austin | Funded by Master Account |
| xxxxxx8150 | Wells Fargo | Carino's Italian Kitchen, Inc.- Depository Account | Depository Sweep /ZBA | Corp | Austin | WF Store Depositories sweep into this account daily. Balance is swept to Master daily. |
| xxxxxx6063 | Wells Fargo | Carino's Italian Kitchen, Inc.- Lubbock #21 | Store Depository ZBA | 21 | Lubbock | |
| xxxxxx9931 | Wells Fargo | Carino's Italian Kitchen, Inc.- N. Little Rock #29 | Store Depository ZBA | 29 | North Little Rock | |
| xxxxxx5982 | Wells Fargo | Carino's Italian Kitchen, Inc.- Katy #30 | Store Depository ZBA | 30 | Katy | |
| xxxxxx6337 | Wells Fargo | Carino's Italian Kitchen, Inc.- Waco #31 | Store Depository ZBA | 31 | Waco | |
| xxxxxx6220 | Wells Fargo | Carino's Italian Kitchen, Inc.- Round Rock #32 | Store Depository ZBA | 32 | Round Rock | |
| xxxxxx6139 | Wells Fargo | Carino's Italian Kitchen, Inc. - New Braunfels #33 | Store Depository ZBA | 33 | New Braunfels | |
| xxxxxx6006 | Wells Fargo | Carino's Italian Kitchen, Inc. - Lake Jackson #34 | Store Depository ZBA | 34 | Lake Jackson | |
| xxxxxx5826 | Wells Fargo | Carino's Italian Kitchen, Inc. - College Station #35 | Store Depository ZBA | 35 | College Station | |
| xxxxxx6022 | Wells Fargo | Carino's Italian Kitchen, Inc.- Laredo #36 | Store Depository ZBA | 36 | Laredo | |
| xxxxxx6030 | Wells Fargo | Carino's Italian Kitchen, Inc.- Longmont 37 | Store Depository ZBA | 37 | Longmont | |
| xxxxxx5792 | Wells Fargo | Carino's Italian Kitchen, Inc. - Brownsville #38 | Store Depository ZBA | 38 | Brownsville | |
| xxxxxx6311 | Wells Fargo | Carino's Italian Kitchen, Inc. - Victoria #40 | Store Depository ZBA | 40 | Victoria | |
| xxxxxx5842 | Wells Fargo | Carino's Italian Kitchen, Inc.- Corpus Christi #41 | Store Depository ZBA | 41 | Corpus Christi | |
| xxxxxx5768 | Wells Fargo | Carino's Italian Kitchen, Inc.- Boise #43 | Store Depository ZBA | 43 | Boise | |
| xxxxxx5727 | Wells Fargo | Carino's Italian Kitchen, Inc.- Ammon #45 | Store Depository ZBA | 45 | Ammon | |
| xxxxxx5735 | Wells Fargo | Carino's Italian Kitchen, Inc. - SA Bandera #48 | Store Depository ZBA | 48 | SA Bandera | |
| xxxxxx6295 | Wells Fargo | Carino's Italian Kitchen, Inc.- Twin Falls #49 | Store Depository ZBA | 49 | Twin Falls | |

| ACCOUNT # | BANK NAME | ACCOUNT NAME | Purpose | LOC # | LOCATION | Notes: |
|---|---|---|---|---|---|---|
| xxxxxx5990 | Wells Fargo | Carino's Italian Kitchen, Inc.- Rockwall #52 | Store Depository ZBA | 52 | Rockwall | |
| xxxxxx5859 | Wells Fargo | Carino's Italian Kitchen, Inc.- Denton #53 | Store Depository ZBA | 53 | Denton | |
| xxxxxx5891 | Wells Fargo | Carino's Italian Kitchen, Inc. - Grand Prairie #54 | Store Depository ZBA | 54 | Grand Prairie | |
| xxxxxx5784 | Wells Fargo | Carino's Italian Kitchen, Inc. - Brodie #55 | Store Depository ZBA | 55 | Brodie | |
| xxxxxx9949 | Wells Fargo | Carino's Italian Kitchen, Inc.- Rogers #56 | Store Depository ZBA | 56 | Rogers | |
| xxxxxx6055 | Wells Fargo | Carino's Italian Kitchen, Inc.- Loveland #57 | Store Depository ZBA | 57 | Loveland | |
| xxxxxx6352 | Wells Fargo | Carino's Italian Kitchen, Inc.- Waxahachie #60 | Store Depository ZBA | 60 | Waxahachie | |
| xxxxxx5966 | Wells Fargo | Carino's Italian Kitchen, Inc.- Parker #61 | Store Depository ZBA | 61 | Parker | |
| xxxxxx5800 | Wells Fargo | Carino's Italian Kitchen, Inc.- Cedar Park #64 | Store Depository ZBA | 64 | Cedar Park | |
| xxxxxx6253 | Wells Fargo | Carino's Italian Kitchen, Inc. - SA 410 #65 | Store Depository ZBA | 65 | SA410 | |
| xxxxxx5917 | Wells Fargo | Carino's Italian Kitchen, Inc. - Houston 290 #69 | Store Depository ZBA | 69 | Houston 290 | |
| xxxxxx6345 | Wells Fargo | Carino's Italian Kitchen, Inc. - Wallisville #71 | Store Depository ZBA | 71 | Wallisville | |
| xxxxxx6105 | Wells Fargo | Carino's Italian Kitchen, Inc.- Meridian #73 | Store Depository ZBA | 73 | Meridian | |
| xxxxxx6154 | Wells Fargo | Carino's Italian Kitchen, Inc.- Parmer #75 | Store Depository ZBA | 75 | Parmer | |
| xxxxxx6162 | Wells Fargo | Carino's Italian Kitchen, Inc.- Pearland #78 | Store Depository ZBA | 78 | Pearland | |
| xxxxxx6170 | Wells Fargo | Carino's Italian Kitchen, Inc. - Pharr #83 | Store Depository ZBA | 83 | Pharr | |
| xxxxxx5834 | Wells Fargo | Carino's Italian Kitchen, Inc.- Colorado Springs #88 | Store Depository ZBA | 88 | Colorado Springs | |
| xxxxxx5743 | Wells Fargo | Carino's Italian Kitchen, Inc.- Baytown #89 | Store Depository ZBA | 89 | Baytown | |
| xxxxxx6261 | Wells Fargo | Carino's Italian Kitchen, Inc.- San Marcos #91 | Store Depository ZBA | 91 | San Marcos | |
| xxxxxx0532 | Wells Fargo | Carino's Italian Kitchen, Inc.- San Marcos #91 | Store Depository ZBA | 91 | San Marcos- Bobcat Bux | This is for the Texas State College Meal Plan card deposits |
| xxxxxx6188 | Wells Fargo | Carino's Italian Kitchen, Inc. - San Angelo #94 | Store Depository ZBA | 94 | San Angelo | |
| xxxxxx6121 | Wells Fargo | Carino's Italian Kitchen, Inc.- Midland #100 | Store Depository ZBA | 100 | Midland | |
| xxxxxx5719 | Wells Fargo | Carino's Italian Kitchen, Inc. - Amarillo #101 | Store Depository ZBA | 101 | Amarillo | |
| xxxxxx6238 | Wells Fargo | Carino's Italian Kitchen, Inc. - SA Military #103 | Store Depository ZBA | 103 | SA Military | |
| xxxxxx5818 | Wells Fargo | Carino's Italian Kitchen, Inc. - Odessa #105 | Store Depository ZBA | 105 | Odessa | |
| xxxxxx8017 | Wells Fargo | Carino's Italian Kitchen, Inc.- Kansas City #108 | Store Depository ZBA | 108 | Kansas City | |

| ACCOUNT # | BANK NAME | ACCOUNT NAME | Purpose | LOC # | LOCATION | Notes: |
|---|---|---|---|---|---|---|
| xxxxxx5941 | Wells Fargo | Carino's Italian Kitchen, Inc.- Hurst #111 | Store Depository ZBA | 111 | Hurst | |
| xxxxxx6279 | Wells Fargo | Carino's Italian Kitchen, Inc. - Slaughter #112 | Store Depository ZBA | 112 | Slaughter | |
| xxxxxx9999 | Capital One | Carino's Italian Kitchen, Inc.- Depository | **Depository Sweep Account** | Corp | Austin | Capital One Store Depositories sweep into this account daily. Balance is transferred to WF Master daily. |
| xxxxxx0082 | Capital One | Carino's Italian Kitchen, Inc.- Alexandria #82 | Store Depository ZBA | 082 | Alexandria | |
| xxxxxx0087 | Capital One | Carino's Italian Kitchen, Inc.- Lafayette #87 | Store Depository ZBA | 087 | Lafayette | |

**EXHIBIT B**

| BANK | AMOUNT | PURPOSE | ADMINISTRATOR |
|------|--------|---------|---------------|
| BVA Compass (xxxxxx908) | $20,000 | TPA Claims | Combined Group Insurance Service |
| CitiBank SAMP (xxxxx181) | $85,000 | Medical from prior plan) | Aetna Self Funded |
| Wells Fargo | $387,00      LOC (cash security) | Workmen's Comp | Traveler's |
| Bank of America (xxxx2628) | $46,000 | Self-Funded Medical Pgm | United Healthcare |
| Bank of America (xxxx2615) | $5000 | Self-Funded Flexible Spending Acct | United Health Care |

# FIRST MASTER LIMITED SERVICE LIST
## *(March 27, 2014)*

**United States Trustee:**

Henry G. Hobbs, Valerie L. Wenger
Deborah Bynum
Office of the U.S. Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

**Debtor:**

Creed Ford, III
President/CEO
Ford Restaurant Group
1514 RR 620 South
Austin, TX 78734
cford@carinos.com

Margaret B. Smith, CPA
Director of Finance
Ford Restaurant Group
1514 RR 620 South
Austin, TX 78734
msmith@fordrestgrp.com

**Proposed Attorneys for Debtor:**

Barbara M. Barron
Stephen W. Sather
Barron & Newburger, P.C.
1212 Guadalupe Street, Suite 104
Austin, TX 78701
bbarron@bn-lawyers.com
ssather@bn-lawyers.com

Kareem Hajjar
Hajjar Sutherland Peters & Washmon, LLP
1205 Rio Grande Street
Austin, TX 78701
khajjar@hspwlegal.com

John Vernon
The Vernon Law Group, PLLC
4925 Greenville Avenue, Suite 200
Dallas, TX 75206
jvernon@vernonlawgroup.com

**Twenty Largest Unsecured Creditors:**

AEI Fund Management, Inc.
Attn:  Brian Schulz
1300 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

Ben E. Keith Company
Attn:  Richard Grasso
601 E. 7th Street
Ft. Worth, TX 76113

Cassidy Turley Midwest, Inc.
Lockbox #129
P.O. Box 1575
Minneapolis, MN 55480-1575

Internal Revenue Service
Special Procedures Staff- Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

National Retail Properties
450 S. Orange Avenue, suite 900
Orlando, FL 32801

Independent Bank of Waco
P.O. Box 21145
Waco, TX 76702

Glazier Foods Company
11303 Antoine
Houston, TX 77066

AEI Income & Growth Fund, LLC
30 East 7th Street, Suite 1300
St. Paul, MN 55101

Wilmington Center, LLC
9471 Lomitas Avenue
Beverly Hills, CA 90210

# FIRST MASTER LIMITED SERVICE LIST
### *(March 27, 2014)*

**Twenty Largest Unsecured Creditors:**

RC Nelms, Jr., Hillcrest Trust
4659 Christopher Place
Dallas, TX 75204-1610

Texas Comptroller of Public Accounts
Revenue Acctg. Division-Bankruptcy
P.O. Box 13528
Austin, TX 78711-3528

Food Services of America
P.O. Box 839
Meridian, ID 83680

AEI Accredited Investor Fund 2002, Ltd.
1300 Minnesota World Trade Center
30 Seventh Street East
St. Paul, MN 55101-4901

ARC CAFÉ, LLC
American Realty Capital
200 Dryden Road, Suite 1100
Dresher, PA 19025

Pleasant Ridge Development Co., LLLP
11601 Pleasant Ridge Road, Suite 300
Little Rock, AR 72212

Shamrock Foods-Consolidated
Department 219
Denver, CO 80291-0219

Magdalena Properties, LLC
2340 Westcliffe Lane, #C
Walnut Creek, CA 94597

Texas Workforce Commission
Attn:  Regulatory Integrity Division-SAU
101 E. 15th Street, Room 556
Austin, TX 78778-0001

GE Capital Franchise Finance Corp.
8377 E. Hartford Drive, Suite 200
Scottsdale, AZ 85255

**Twenty Largest Unsecured Creditors (cont'd):**

Gentilis, Inc.
6728 North Hills Drive
Texarkana, TX 75503

**Secured Creditors:**

FRG Capital, LLC
1514 RR 620 South
Austin, TX 78734

GE Capital Franchise Finance Corp.
Attn:  Bond Harberts, Senior VP
500 West Monroe St., 21st Flr (21.N.105)
Chicago, IL 60661
bond.harberts@ge.com

Independent Bank of Waco
Attn:  Charley Rigney
P.O. Box 21145
Waco, TX 76702

Prosperity Bank
Attn:  Tim Cardinal
1415 RR 620 South
Austin, TX 78734

**Miscellaneous:**

Summit Energy
25716 Network Place
Chicago, IL 60673-1257

CASS
2675 Corporate Exchange Drive
Columbus, OH 43231

FinTech
7702 Woodland Center Blvd., Suite 50
Tampa, FL 33614

# FIRST MASTER LIMITED SERVICE LIST
### *(March 27, 2014)*

**Miscellaneous (cont'd):**

Wells Fargo Bank, N.A.
Attn:  Zakir A. Khan, AAP
90 South 7th Street, 9th Floor
MAC-N9305-09L
Minneapolis, MN 55479


**Requested Notice:**

Blake Rasner
Haley & Olson, P.C.
801 N. Valley Mills Drive, Suite 600
Waco, TX 76710
brasner@haleyolson.com


Jeffrey T. Wegner
Kutak Rock, LLP
1650 Farnam Street
Omaha, NE 68102-2186
jeffrey.wegner@kutakrock.com


William M. Kane
Traylor, Tompkins & Black, P.C.
751 Horizon Court, Suite 200
Grand Junction, CO 81506-8754
wmk@grandjunctionlaw.com


Jason P. Wylie
The Law Office of Jason Wylie
8553 N. Beach St., PMB 316
Fort Worth, TX 76244-4919
jason@jasonwylielaw.com