**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **FIRED UP, INC.** | § | **CASE NO. 14-10447** |
| | § | **(Chapter 11)** |
| **DEBTOR[1]** | § | |

**EMERGENCY [FIRST] MOTION TO REJECT UNEXPIRED**
**LEASES OF NON-RESIDENTIAL REAL AND RELATED EQUPMENT LEASES**
***NUNC PRO TUNC***

Debtor hereby files this its ***Emergency [First] Motion to Reject Unexpired Leases of Non-Residential Real Property Nunc Pro Tunc*** ("Motion") requesting the entry of an order pursuant to 11 U.S.C. § 365 seeking to reject the leases of non-residential real property ("Real Property Leases") set forth below and more fully described in Exhibit A attached hereto *nunc pro tunc* to the Petition Date:

I.  Leases Proposed for *Nunc Pro Tunc* Rejection

| Store # | Lessor/Servicer | Lease Type | Leasehold Property Location |
|---|---|---|---|
| 85 | AEI Income & Growth Fund 25 LLC | Non-Residential Real Property (Full) | 2638 Derek Drive Lake Charles, LA 70607 |
| 98 | AEI Income & Growth Fund 25 LLC | Non-Residential Real Property (Full) | 5700 N. Elizabeth Street Pueblo, CO  81008 |
| 42 | Cassidy Turley Midwest, Inc. | Non-Residential Real Property (Full) | 421 E. Nolana Loop McAllen, TX  78504 |

---

[1] Until February 26, 2014, Debtor's business was being operated partially by the Debtor and partially by its two wholly owned subsidiaries, Kona Restaurant Group, Inc. and Carino's Italian Kitchen, Inc..  Those entities were merged into the Debtor on that date.

| 44 | Cassidy Turley Midwest, Inc. | Non-Residential Real Property (Full) | 389 S. Wadsworth Blvd. Lakewood, CO  80226 |
|---|---|---|---|
| 66 | Cassidy Turley Midwest, Inc. | Non-Residential Real Property (Full) | 510 LBJ Freeway (West IH-635) Irving, TX  75063 |
| 81 | Cassidy Turley Midwest, Inc. | Non-Residential Real Property (Full) | 960 N. Hwy 287 Mansfield, TX  76063 |
| 84 | Cassidy Turley Midwest, Inc. | Non-Residential Real Property (Full) | 411 B East Loop 281 Longview, TX  75605 |
| 51 | Gentilis, Inc. | Non-Residential Real Property (Full) | 3402 St. Michael Dr. Texarkana, TX  75503 |
| 95[2] | Moondance, Inc. | Non-Residential Real Property (Full) | 5900 S. Hulen St. Fort Worth, TX  76132 |
| 46 | National Retail Properties | Non-Residential Real Property (Full) | 3805 I-10 South Beaumont, TX  77705 |
| 50[3] | National Retail Properties | Non-Residential Real Property (Full) | 595 E. Round Grove Road Lewisville, TX  75067 |
| 47 | Native Land Investments, Ltd. | Non-Residential Real Property (Full) | 2473 28th Street Greeley, CO  80634 |
| 96 | RC NELMS JR. HILLCREST TRUST | Non-Residential Real Property (Full) | 1725 Loop 323 WSW Tyler, TX  75701 |

[2] This store is closed and the lease has been terminated.  To the extent that any issue arises with respect to the termination, Debtor is requesting that the lease be rejected *nunc pro tunc* to the Petition Date in the event there is any subsequent issue with respect to the termination.
[3] This store is closed and the lease has been terminated.  To the extent that any issue arises with respect to the termination, Debtor is requesting that the lease be rejected *nunc pro tunc* to the Petition Date in the event there is any subsequent issue with respect to the termination.

| 59 | Wilmington Center, LLC | Non-Residential Real Property (Full) | 2840 Highway 6 & 50, Grand Junction, CO |
|---|---|---|---|
| 90 | Magdalena Properties, | Non-Residential Real Property (Ground) | 5750 Hwy. 6, Missouri City, TX 77459 |
| 104 | Pleasant Ridge Development Co., LLLP | Non-Residential Real Property (Ground) | 11600 Pleasant Ridge Rd., West Little Rock, AR 72223 |
| 37 | AEI Accredited Investor Fund 2002, Ltd. | Non-Residential Real Property (Full) | 2033 Ken Pratt Blvd., Longmont, CO 80501 |

In Debtor's business judgment, rejection of the Real Property Leases is in the best interest of its estate and creditors and in support thereof, Debtor shows the following:

## II. JURISDICTION AND PROCEDURAL BACKGROUND

1.      On March 27, 2014 (the "Petition Date"), Debtor  filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court"), thereby commencing this chapter 11 case ("Case").  Debtor continues in possession of its property and it is operating and managing its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

2.      No trustee or examiner has been appointed in the Debtor's Chapter 11 Case, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The basis for the relief herein is primarily grounded in 11 U.S.C. §§ 105(a) as supplemented and amplified by Fed. R. Bank. P. 6003.

### III.  THE DEBTOR AND ITS BUSINESS

<u>Overview</u>

6.     Fired Up, Inc. ("Fired Up") is a corporation based in Austin, Texas, which has been involved in the hospitality industry since 1997.  It currently owns and operates forty-six (46) company-owned stores ("Company Stores") known as Johnny Carino's Italian ("Carino's") in seven states (Texas, Arkansas, Colorado, Louisiana, Idaho, Kansas and Missouri) and  sixty-one (61) franchised or licensed locations in seventeen (17) states (California, Florida, Georgia, Indiana, Kentucky, Michigan, Montana, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Utah and Washington) and four other countries (Bahrain, Dubai, Egypt and Kuwait) ("Franchisees" or "Franchised Stores").  Carino's focuses on providing high quality, classic but contemporary, innovative Italian cuisine at an exceptional value in an authentic Italian atmosphere to a broad demographic from intimate "date nights" for young singles, to large family gatherings.

7.     Prior to 2014, the business was operated through three entities:   Fired Up, Inc. was the parent company.  Ownership of Fired Up, Inc. as of the Petition Date was:  74.77% by Creed Ford III, his wife and immediate family,  13.60%  by Abdulghani Al-Ghunaim and Al-Ghunaim Trading Co., Ltd., and  the remaining 11.63% percent by approximately 180 other shareholders. Kona Restaurant Group, Inc. ("Kona") was wholly owned by Fired Up, Inc.  and was the franchisor for the Debtor's franchises and the lessee for most of the Company Store locations..  Carino's Italian Kitchen, Inc. ("CIK"), also solely owned by Fired Up, Inc., operated

the Company Stores.    On February 26, 2014, after extensive consultation with  its accountants, tax advisors and corporate attorneys, the three companies were merged into the Debtor,  Fired Up, Inc.

8.      Fired Up currently employs approximately 2,900 persons in its restaurants and corporate headquarters.    Creed Ford III is the majority shareholder in Fired Up and also sits on its Board of Directors in addition to serving as President and as sole Chief Executive Officer since 2008.

**Company History**

9.      Creed Ford III ("Ford" or "Creed Ford") and Norman J. Abdallah formed Fired Up, Inc. in 1997 for the purpose of acquiring the Kona Restaurant Group from Brinker International, Inc. ("Brinker").  At that time, Kona operated the six-unit Johnny Carino's Italian Kitchen chain and one Kona Ranch  Steakhouse.    By 2006, Fired Up had expanded the Carino's concept to 173 company-owned and franchised locations in thirty (30)  states and four (4) foreign countries.

10.      By 2007, however, revenues had begun slipping and guest counts were down. The Company's initial business strategy was to rebrand and fine tune its concept.  It began recreating itself as Carino's Italian and moving away from the old Johnny Carino's brands. However, before the success of this strategy could be determined, the 2008 recession created significant additional challenges for the company.    In the fiscal year ending June 25, 2008, the Company reported a net loss of $15.9 million.

11.      Creed Ford sold the Chili's franchises which another of his businesses  owned and operated in order to devote his full attention to the Carino's Italian brand.  In 2008, he assumed the position of CEO in addition to being chairman of the board.    In January  of 2011,

Mr. Ford arranged the redemption for $16 million of the preferred shares of the Debtor held by Rosewood Capital, which had been an investor in the company since 2002.    The redemption was financed with a loan from FRG Capital, LLC, a company owned by the Ford family.  As the largest and majority shareholder, Ford did not receive any consideration for the loan to Fired Up, Inc. to redeem the Rosewood preferred shares.

12.    As a result of changes instituted by management under Ford's direction, the Company subsequently experienced several profitable years.    However, by the end of the fiscal year ending June 26, 2013,  the company reported a net loss of $5.9 million.  It appeared that while a majority of the Company's stores were profitable, a minority of locations were consistently losing significant amounts of money.    Ford instituted a comprehensive review of Fired Up's sixty-five (65) company-owned stores.    From October 2013 through March 2014, the company closed a total of nineteen (19) locations which it had determined were unprofitable and likely to remain so.

**Financial Information**

13.    Fired Up's real property assets consist of the land and building out of which a Company Store operated in Abilene, Texas, and is valued at $1.6 million. The Company Store at this location is no longer open and Fired Up is in the process of negotiating a sale of this property at a price which it believes to be fair market value.  The remainder of Debtor's locations are leased.   Debtor holds long-term ground leases and owns the buildings on eleven of these locations located upon each piece of real property.   The Debtor has valued these buildings at $6.2 million.[4]   The Debtor estimates the book value of its tangible personal property assets at approximately $7.3 million.   The Debtor also holds significant intangible property, including

---

[4] This number  is based on the value of the building *with*  the existing ground lease.  A building has  little value, if any,  if  its ground lease is terminated for any reason and the building  belongs to the Lessor at the end of the ground lease.  This valuation does not discount for these factors, which are significant.

trademarks and other intellectual property.   The company estimates that it owes $17.7 million in contractual secured debt, including $13.4 million to FRG Capital, LLC, $1.9 million to GE Capital Franchise Finance Corp., $600,000 to Independent Bank of Waco and $1.2 million to Prosperity Bank.    The company owes $260,000 in delinquent *ad valorem* taxes; its current *ad valorem* property tax obligations, incurred but not due, are approximately $2.2 million.    Debtor has current priority obligations to employees consisting of approximately $950,000 in wages, $400,000 in accrued vacation time and $70,000 in bonuses earned and owed.   The Debtor owes $1.9 million in priority tax claims.    The Company's draft schedules, which are still being prepared, reflect unsecured debts of $13.8 million,  but this amount very likely overstates the Debtor's actual liabilities.   Major unsecured liabilities include $2.8 million owed to AEI Fund Management, Inc. with regard to two shortfall notes, $3.3 million in contingent obligations with regard to leases to be rejected, $2.2 million owed to a former vendor and $620,000 owed to Independent Bank of Waco for a loan on a surrendered ground lease.    Much of the remaining amounts scheduled consist of current amounts owed to vendors and estimated tax amounts to be paid under triple net leases in the future.   In terms of numbers, only a handful of  priority and general unsecured operating debts (*e.g.* vendors, utilities, taxes) have not been kept current and were not current at the time of filing.

14.    For the fiscal year ending June 27, 2012, the company reported total revenues of $125.7 million and net income of $614,000. Guest counts for this period totaled 8.6 million.   For the fiscal year ending June 26, 2013, the company reported total revenues of $120.8 million and a net loss of $5.9 million. Guest counts equaled 8.5 million.   Annualized gross sales for the Company Stores for 2014 are expected to be about approximately $103 million. As of December 31, 2013, Net Operating Cash Flow was ($2.6 million); Net Operating Cash Flow going forward,

after the store closings, is estimated to be at least $300,000 per month *positive* with an increase in the profitability of each of the operating stores of at least six percent (6%). Annualized General and Administrative costs have been reduced approximately $2.5 million from 2013 to 2014.

**Reasons for Filing Bankruptcy**

15.    As discussed above, the Company began its own "out of court" reorganization in the last quarter of 2013: it closed unprofitable restaurants, it worked with the landlords of its closed stores to find other tenants or sell particular stores or work out terminations of leases and agreed damages owed. It significantly decreased fixed expenses. It began examining programs and other marketing strategies to increase revenues. However, while most of the Company's landlords and other creditors continued in these "bad times" with the collegial working relationship they had had with the Company and Creed Ford over decades, some did not. The actual timing of the filing on March 27, 2014 was influenced by two lawsuits—one by a former vendor which was aggressively seeking unreasonable repayment terms on an outstanding amount owed when that vendor and Debtor ceased doing business and the other by a former Landlord.

16.    The general motivation behind the filing of its chapter 11 petition was to try to tie up the "loose ends" of the Company's self-imposed "reorganization" that did not appear capable of being tied up without litigation. In particular, the provisions of the Bankruptcy Code with respect to the rejection of burdensome leases and the ability to propose and pay out its debts pursuant to a Plan without piecemeal prosecution by random uncooperative creditors undermining same were particularly attractive.

**Going Forward**

17.     Debtor's projections when it began analyzing its profitable and unprofitable stores indicated that it had the ability to immediately start showing a net operating profit immediately upon the closing of its unprofitable locations with little additional growth in revenues.   Its projections have been born out as these stores have been closed.  Based on these projections, the Company is reasonably optimistic that without the continuing obligation of the unprofitable locations, it will be able to operate on a profitable basis and to devise a plan of reorganization for repayment of its existing obligations and those created from the lease rejections. It hopes that, with the burden of aggressive creditors continuing unrelated collection efforts, it will be able to better focus on efforts to better market itself, increase revenues and continue to cut costs.

## IV.  FACTUAL BACKGROUND FOR RELIEF REQUESTED

18.     Approximately seven (7)  months prior to the Petition Date, as part of an attempt to reverse the financial  losses it was experiencing, Debtor commenced a unit-by-unit analysis of its Company Stores.  The analysis clearly showed that: (i) 34 Company Stores were consistently profitable or, at worst breaking even; (ii) 14 Company Stores were consistently losing money; and (iii) 18 stores were "on the cusp."

19.     In some instances where a Company Store was deemed unprofitable because of its performance over three or so years, direct competition or macro-economic circumstances that impacted the Debtor's customer base were deemed to be the cause:  Debtor was unable to attract the necessary volume of business to sustain and justify continued operations at these restaurant locations, given their operating expenses—including the Non-Residential Real Real Property Leases, both ground and "full".  In other instances, it was clear the only significant variable

between profitability and loss was the rent and lease terms for certain locations and that, with concessions with respect to a particular lease and some fine-turning and improvement in operations, the particular units could become profitable.

20.    Debtor made the determination to close those locations with respect to which it did not believe with some certainty it could mitigate or eliminate its losses in a relatively short period of time.  Between September of 2013 and the Petition Date, it closed nineteen (19) stores as set forth herein[5].  As operations have ceased, it is appropriate for the Debtor to reject fifteen (15) of these Real Property Leases.[6]  Continuation of the leases would cause the Debtor to incur expenses for which its estates would receive no value and would give rise to claims for administrative expenses, which would unjustifiably skew the payment algorithm set forth in the Bankruptcy Code.  Therefore, rejection of the Real Property Leases is necessary.

21.    Specifically, the Real Property Leases set forth in Exhibit A hereto must be rejected as the Debtor determined pre-petition, in its business judgment, to close the restaurants associated with the Real Property Leases.  The restaurants were all closed prior to the Petition Date and the premises surrendered to the respective landlords.[7]  Accordingly, relief *nunc pro tunc* to the Petition Date is warranted.

---

[5] The Debtor also closed four additional stores during 2012 and the first six months of 2013.  Those locations are not affected by this motion.

[6] Debtor is not seeking to reject four of the leases on the nineteen (19) closed stores at this time, as Debtor is pursuing options for the sale of its property and/or transfer of the leases which will net far more to the Debtor than it will save by rejection at this time.

[7] Debtor, however, has continued to work with many of the landlords of the Company Stores that have been closed. This includes attempting to find new tenants and, in some of these locations: in some of these cases, it has left the furniture, fixtures and equipment extant with the Landlord's permission so that the landlord can show the premises in "turnkey" condition.  This method of closing stores also provides potential buyers for Debtor's assets at higher than auction or distress sale values.

## V. BASIS FOR THE RELIEF REQUESTED

22.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a).

23.     Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and, upon finding that a debtor has exercised its sound business judgment, approve the rejection under Section 365(a) of the Bankruptcy Code. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *see also Group of Inst'l Investors v. Chicago, Milwaukee, St. Paul, & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943); *Official Comm. of Unsecured Creditors of Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524 n.5 (5th Cir. 2004) ("The rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

24.     Rejection under Section 365 is generally intended to enable the debtor to relieve itself and the bankruptcy estate from burdensome and unprofitable contracts in order to preserve and maximize the value of the bankruptcy estate. *Stewart Title Guar. Co. v. Old Republic Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("[Section 365] allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *In re Mirant Corp.*, 303 B.R. 319, 330-31 (Bankr. N.D. Tex. 2003) ("There is substantial authority for the proposition that section 365 was intended to allow a trustee or debtor in possession to eliminate burdensome, unprofitable contracts and preserve for the estate's benefit valuable agreements.").

25.     In addition, many courts have authorized rejection retroactively to a date prior to the entry of the order authorizing such rejection. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abno*s, 485 F.3d. 602 (2d Cir. 2007) (affirming the bankruptcy court's equitable authority to authorize the retroactive rejection of a nonresidential lease of real property where advance notice is provided); *In re Thinking Mach. Corp. v. Mellon Fin. Servs.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (approving retroactive orders of rejection where the balance of equities favors such relief); *In re Romacorp, Inc.*, 2006 LEXIS 4674 (Bankr. N.D. Tex. Feb. 2, 2006).

26.     In these cases, the Debtor respectfully requests that the Court enter an order rejecting the Real Property Leases set forth in Exhibit A effective as of the Petition Date.  The locations were unprofitable, and the Debtor no longer has any ongoing operations at the leased premises under the Real Property Leases, is no longer in use of the related equipment, and thus cannot continue to service the obligations under the Real Property Leases without endangering the profitable portions of its business.  Possession of each premises and the related equipment was surrendered to the applicable lessor during the weeks leading up to or immediately prior to the Petition Date, as more fully reflected on the attached Exhibit A.

27.     Accordingly, in an exercise of its business judgment, the Debtor has determined and respectfully submits that rejecting the Real Property Leases listed in Exhibit A is in the best interests of the Debtor's estate, its creditors and all parties-in-interest in this bankruptcy case.  Furthermore, the Debtor submits that its decision to reject the Real Property Leases is a critical component of the reorganization of the Debtor's overall business, represents an exercise of the Debtor's sound business judgment, and is in the best interest of the Debtor's estate and creditors.

28.     Federal Rule of Bankruptcy Procedure 6006(f) sets forth the applicable requirements for omnibus motions to reject unexpired leases or executory contracts:

(f)    Omnibus Motions. A motion to reject … multiple executory contracts or unexpired leases that are not between the same parties shall:

(1)    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(2)    list parties alphabetically and identify the corresponding contract or lease;

(3)    specify the terms, including the curing of defaults, for each requested assumption or assignment;

(4)    specify the terms, including the identity of each assigneeand the adequate assurance of future performance by each assignee, for each requested assignment;

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(6) be limited to no more than 100 executory contracts or unexpired leases.

FED. R. BANKR. P. 6006(f).

29.    As is clearly set forth herein and in the attached Exhibit A, the Debtor submits that the Motion satisfies the requirements set forth in Bankruptcy Rule 6006(f).

30.    The Debtor's determination to reject the Real Property Leases is based upon valid business justifications, as the Real Property Leases will not be necessary to the Debtor's operations and will not provide revenue.  The Debtor therefore seeks to reject the Real Property Leases effective as of the Petition Date.  Rejection will minimize rejection damage claims and any administrative claims that may be asserted by the non-Debtor party to the Real Property Leases.

31.    Pursuant to Section 365(g)(1) of the Bankruptcy Code, the rejection of an executory contract or unexpired lease of the Debtor constitutes a breach of such contract, if such contract has not been assumed, immediately before the filing date.  Therefore, any claim by the non-Debtor parties arising from the rejection of any Real Property Leases or the Related Equipment Leases shall be deemed to constitute a prepetition claim against the Debtor.

## VI.  NOTICE

32.     Bankruptcy Rules 6006 and 9014 generally require that any proceeding to assume, reject or assign an executory contract or unexpired lease be made only upon motion and on notice to the other party to the contract, the committee appointed under the Code and any other party-in-interest.

33.     Notice of this Motion has been given to the Office of the United States Trustee for the Western District of Texas, the non-Debtor party to each of the Real Property Leases pursuant to the terms of the Real Property Leases (via overnight delivery service, fax and / or email, to the addresses reflected on Exhibit A), the parties on the Debtor's proposed Master Service List, and other parties-in-interest who have requested notice.

## VII.  CONCLUSION

WHEREFORE, the Debtor respectfully request entry of an order, (i) granting this Motion; (ii) approving the Debtor's rejection of the Real Property Leases as described herein, and (iii) granting the Debtor such other and further relief as this Court deems just.

DATED:        March 27, 2014

Respectfully Submitted,

BARRON & NEWBURGER, P.C.

*/s/ Barbara M. Barron*
Barbara Barron (SBN 01817300)
bbarron@bn-lawyers.com
Stephen W. Sather  (SBN 17657520)
ssather@bn-lawyers.com
1212 Guadalupe St Ste 104
Austin, Texas 78701-1837
Telephone:  (512) 476-9103
Facsimile:  (512) 476-9253

PROPOSED ATTORNEYS FOR THE DEBTOR

## **CERTIFICATE OF SERVICE**

I certify that we directed North American Credit Services, Debtor's servicing agent, to serve a copy of the foregoing by first class mail, postage prepaid and properly addressed, on March 28, 2014, to all parties listed on the Service List attached to the filed copy of this Motion and electronically by the Court's ECF system to all parties registered to receive such service.  Copies of the matrix are not included in service copies but may be obtained from the Clerk of the Court or Debtor's counsel.

*/s/ Barbara M. Barron*

## EXHIBIT A - LEASES

| Store ID | Location | Lessor | Lease Type | Leasehold Property Location | Notice Address, Facsimile and Email Address | Contract Date | Closed Date |
|---|---|---|---|---|---|---|---|
| 37 | Longmont | AEI Accredited Investor Fund 2002 Ltd. Partnership | Real Property Lease | 2033 Ken Pratt Blvd., Longmont, CO 80501 | AEI Accredited Investor Fund 2002 LTD Partnership 1300 Minnesota World Trade Center St. Paul, MN 55101-4901 | 12/30/2003 | 1/5/2014 |
| 85 | Lake Charles | AEI Income & Growth Fund 25 LLC | Real Property Lease | 2638 Derek Drive Lake Charles, LA 70607 | AEI Income & Growth Fund 25 LLC 30 East 7th St., Ste 1300 St. Paul, MN 55101 | 12/9/2003 | 1/5/2014 |
| 98 | Pueblo | AEI Income & Growth Fund 25 LLC | Real Property Lease | 5700 N. Elizabeth St. Pueblo, CO 81008 | AEI Income & Growth Fund 25 LLC 30 East 7th St., Ste 1300 ST. Paul, MN 55101 | 11/20/2004 | 10/21/2013 |
| 42 | McAllen | Cassidy Turley Midwest, Inc. | Real Property Lease | 421 E. Nolana Loop McAllen, TX 78504 | Cassidy Turley Midwest, Inc. Lockbox #129, POB 1575 Minneapolis, MN 55480-1575 | 12/30/2003 | 10/21/2013 |
| 44 | Lakewood | Cassidy Turley Midwest, Inc. | Real Property Lease | 389 S. Wadsworth Blvd. Lakewood, CO 80226 | Cassidy Turley Midwest, Inc. Lockbox #129, POB 1575 Minneapolis, MN 55480-1575 | 4/19/2000 | 10/21/2013 |
| 66 | Irving | Cassidy Turley Midwest, Inc. | Real Property Lease | 510 LBJ Freeway (West IH-635) Irving, TX 75063 | Cassidy Turley Midwest, Inc. Lockbox #129, POB 1575 Minneapolis, MN 55480-1575 | 11/5/2002 | 1/5/2014 |

| Store ID | Location | Lessor | Lease Type | Leasehold Property Location | Notice Address, Facsimile and Email Address | Contract Date | Closed Date |
|---|---|---|---|---|---|---|---|
| 81 | Mansfield | Cassidy Turley Midwest, Inc. | Real Property Lease | 960 N. Hwy 287 Mansfield, TX 76063 | Cassidy Turley Midwest, Inc. Lockbox #129, POB 1575 Minneapolis, MN 55480-1575 | 4/3/2003 | 1/5/2014 |
| 84 | Longview | Cassidy Turley Midwest, Inc. | Real Property Lease | 411 B East Loop 281 Longview, TX 75605 | Cassidy Turley Midwest, Inc. Lockbox #129, POB 1575 Minneapolis, MN 55480-1575 | 11/5/2003 | 12/3/2013 |
| 51 | Texarkana | Gentilis | Real Property Lease | 3402 St. Michael Dr. Texarkana, TX 75503 | Gentilis c/o Moja Lynn Lindsey Post Office Box 810 Redwood Valley, CA 95470 | 3/10/1998 | 12/5/2013 |
| 90 | Missouri City | MAGDALENA PROPERTIES LLC | ground lease | 5750 Hwy. 6, Missouri City, TX 77459 | Magdalena Properties LLC 2340 Westcliffe Lane #C Walnut Creek, CA 94597 | 11/12/2003 | 10/17/2013 |
| 95 | Ft Worth - Hulen | Moondance, Inc. | Real Property Lease | 5900 S. Hulen St. Fort Worth, TX 76132 | Moondance, Inc. 1514 Ranch Road 620 South Lakeway, TX 78734 | 5/12/2005 | 1/5/2014 |
| 46 | Beaumont | National Retail Properties | Real Property Lease | 3805 I-10 South Beaumont, TX 77705 | National Retail Properties 450 S. Orange Ave. Suite 900 Orlando, FL 32801 | 1/29/2001 | 1/5/2014 |
| 50 | Vista Ridge | National Retail Properties | Real Property Lease | 595 E. Round Grove Road Lewisville, TX 75067 | National Retail Properties 450 S. Orange Ave. Suite 900 Orlando, FL 32801 | 7/25/1997 | 1/5/2014 |
| 47 | Greeley | Native Land Investments, Ltd. | Real Property Lease | 2473 28th Street Greeley, CO 80634 | Native Land Investments, Ltd. 1514 Ranch Road 620 South Lakeway, TX 78734 | 9/24/2013 | 10/21/2013 |
| 104 | West Little Rock | Pleasant Ridge Development Co., LLLP | ground lease | 11600 Pleasant Ridge Rd., West Little Rock, AR 72223 | Pleasant Ridge Development Co., LLLP 11601 Pleasant Ridge Road, Ste | 8/10/2004 | 1/5/2014 |

| Store ID | Location | Lessor | Lease Type | Leasehold Property Location | Notice Address, Facsimile and Email Address | Contract Date | Closed Date |
|---|---|---|---|---|---|---|---|
| 96 | Tyler | RC NELMS JR. HILLCREST TRUST | Real Property Lease | 1725 Loop 323 WSW Tyler, TX 75701 | RC Nelms Jr. Hillcrest Trust 4659 CHRISTOPHER PLACE Dallas, TX 75204-1610 | 5/12/2005 | 1/5/2014 |
| 59 | Grand Junction | Wilmington Center LLC | Real Property Lease | 2840 Hwy. & 50, Grand Junction, CO 81505 | Wilmington Center LLC 9471 Lomitas Ave. Beverly Hills, CA 90210 | 9/28/2007 | 2/24/2014 |

# FIRST MASTER LIMITED SERVICE LIST
### *(March 27, 2014)*

**United States Trustee:**

Henry G. Hobbs, Valerie L. Wenger
Deborah Bynum
Office of the U.S. Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701

**Debtor:**

Creed Ford, III
President/CEO
Ford Restaurant Group
1514 RR 620 South
Austin, TX 78734
cford@carinos.com

Margaret B. Smith, CPA
Director of Finance
Ford Restaurant Group
1514 RR 620 South
Austin, TX 78734
msmith@fordrestgrp.com

**Proposed Attorneys for Debtor:**

Barbara M. Barron
Stephen W. Sather
Barron & Newburger, P.C.
1212 Guadalupe Street, Suite 104
Austin, TX 78701
bbarron@bn-lawyers.com
ssather@bn-lawyers.com

Kareem Hajjar
Hajjar Sutherland Peters & Washmon, LLP
1205 Rio Grande Street
Austin, TX 78701
khajjar@hspwlegal.com

John Vernon
The Vernon Law Group, PLLC
4925 Greenville Avenue, Suite 200
Dallas, TX 75206
jvernon@vernonlawgroup.com

**Twenty Largest Unsecured Creditors:**

AEI Fund Management, Inc.
Attn:  Brian Schulz
1300 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

Ben E. Keith Company
Attn:  Richard Grasso
601 E. 7th Street
Ft. Worth, TX 76113

Cassidy Turley Midwest, Inc.
Lockbox #129
P.O. Box 1575
Minneapolis, MN 55480-1575

Internal Revenue Service
Special Procedures Staff- Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

National Retail Properties
450 S. Orange Avenue, suite 900
Orlando, FL 32801

Independent Bank of Waco
P.O. Box 21145
Waco, TX 76702

Glazier Foods Company
11303 Antoine
Houston, TX 77066

AEI Income & Growth Fund, LLC
30 East 7th Street, Suite 1300
St. Paul, MN 55101

Wilmington Center, LLC
9471 Lomitas Avenue
Beverly Hills, CA 90210

# FIRST MASTER LIMITED SERVICE LIST
### *(March 27, 2014)*

**Twenty Largest Unsecured Creditors:**

RC Nelms, Jr., Hillcrest Trust
4659 Christopher Place
Dallas, TX 75204-1610

Texas Comptroller of Public Accounts
Revenue Acctg. Division-Bankruptcy
P.O. Box 13528
Austin, TX 78711-3528

Food Services of America
P.O. Box 839
Meridian, ID 83680

AEI Accredited Investor Fund 2002, Ltd.
1300 Minnesota World Trade Center
30 Seventh Street East
St. Paul, MN 55101-4901

ARC CAFÉ, LLC
American Realty Capital
200 Dryden Road, Suite 1100
Dresher, PA 19025

Pleasant Ridge Development Co., LLLP
11601 Pleasant Ridge Road, Suite 300
Little Rock, AR 72212

Shamrock Foods-Consolidated
Department 219
Denver, CO 80291-0219

Magdalena Properties, LLC
2340 Westcliffe Lane, #C
Walnut Creek, CA 94597

Texas Workforce Commission
Attn:  Regulatory Integrity Division-SAU
101 E. 15th Street, Room 556
Austin, TX 78778-0001

GE Capital Franchise Finance Corp.
8377 E. Hartford Drive, Suite 200
Scottsdale, AZ 85255

**Twenty Largest Unsecured Creditors (cont'd):**

Gentilis, Inc.
6728 North Hills Drive
Texarkana, TX 75503

**Secured Creditors:**

FRG Capital, LLC
1514 RR 620 South
Austin, TX 78734

GE Capital Franchise Finance Corp.
Attn:  Bond Harberts, Senior VP
500 West Monroe St., 21st Flr (21.N.105)
Chicago, IL 60661
bond.harberts@ge.com

Independent Bank of Waco
Attn:  Charley Rigney
P.O. Box 21145
Waco, TX 76702

Prosperity Bank
Attn:  Tim Cardinal
1415 RR 620 South
Austin, TX 78734

**Miscellaneous:**

Summit Energy
25716 Network Place
Chicago, IL 60673-1257

CASS
2675 Corporate Exchange Drive
Columbus, OH 43231

FinTech
7702 Woodland Center Blvd., Suite 50
Tampa, FL 33614

## FIRST MASTER LIMITED SERVICE LIST
### *(March 27, 2014)*

**Miscellaneous (cont'd):**

Wells Fargo Bank, N.A.
Attn:  Zakir A. Khan, AAP
90 South 7th Street, 9th Floor
MAC-N9305-09L
Minneapolis, MN 55479


**Requested Notice:**

Blake Rasner
Haley & Olson, P.C.
801 N. Valley Mills Drive, Suite 600
Waco, TX 76710
brasner@haleyolson.com


Jeffrey T. Wegner
Kutak Rock, LLP
1650 Farnam Street
Omaha, NE 68102-2186
jeffrey.wegner@kutakrock.com


William M. Kane
Traylor, Tompkins & Black, P.C.
751 Horizon Court, Suite 200
Grand Junction, CO 81506-8754
wmk@grandjunctionlaw.com


Jason P. Wylie
The Law Office of Jason Wylie
8553 N. Beach St., PMB 316
Fort Worth, TX 76244-4919
jason@jasonwylielaw.com