IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | § | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FIRED UP, INC., | § | CASE NO. 14-10447-TMD |
| | § | |
| Debtor. | § | |
| | § | |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OMNIBUS
REPLY TO (I) OBJECTION TO APPLICATION FOR APPROVAL OF EMPLOYMENT OF
PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL
FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS EFFECTIVE
AS OF APRIL 8, 2014; (II) LIMITED OBJECTION TO APPLICATION FOR
APPROVAL OF EMPLOYMENT OF STREUSAND, LANDON & OZBURN, LLP
AS LOCAL COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS; AND (III) OBJECTION TO APPLICATION FOR APPROVAL OF
EMPLOYMENT OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR FOR
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

TO THE HONORABLE TONY M. DAVIS, U.S. BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the case of Fired Up, Inc., the above-captioned debtor (the "Debtor"), hereby files this omnibus reply (the "Omnibus Reply") to the (i) *Objection to Application for Approval of Employment of Pachulski Stang Ziehl & Jones LLP as Counsel for the Official Committee of Unsecured Creditors Effective as of April 8, 2014* [Docket No. 186] (the "PSZJ Application"); (ii) *Limited Objection to Application for Approval of Employment of Streusand, Landon & Ozburn, LLP as Local Counsel for the Official Committee of Unsecured Creditors* [Docket No. 187] (the "SLO Application"); and (iii) *Objection to Application for Approval of Employment of FTI Consulting, Inc. as Financial Advisor for the Official Committee of Unsecured Creditors* [Docket No. 188] (the "FTI

Application" and, together with the PSZJ Application and the FTI Application, the "Committee Professional Applications").[1]

**Preliminary Statement**

1. It is incontrovertible that the Debtor is hopelessly insolvent. Regardless of the ultimate disposition of this case—whether through a sale of the Debtor or confirmation of a Committee or Debtor plan—unsecured creditors are the de facto owners of the Debtor. Thus, in a normal case, the Debtor's fiduciary obligations would be exactly aligned with those of the Committee: to maximize recovery to unsecured creditors. But this is not a normal case. The Debtor's chief executive officer and member of its board of directors indirectly asserts a secured claim in excess of $13 million on behalf of an entity called FRG Capital, LLC (the "Insider Secured Indebtedness"),[2] which is owned by the chief executive officer and his wife. Indeed, FRG Capital, LLC has filed a motion for adequate protection against the Debtor. The Debtor's chief executive officer is also the majority shareholder in the Debtor. His equity interests were substantially enhanced by virtue of a $16 million dollar redemption of preferred shares of a former equity holder that left the company saddled with the Insider Secured Indebtedness. Under these odd circumstances, it is difficult to understand how the Debtor can fulfill its mandate to advance the interests of unsecured creditors given the chief executive officer's

---

[1] Several of the Debtor's objections to the Committee Professional Applications are identical. Rather than restate and repeat the same arguments in three separate pleadings, the Committee has filed this Omnibus Reply in order to promote efficiency and conserve estate and judicial resources.

[2] The Committee is examining the Insider Secured Indebtedness and other insider prepetition transactions and reserves any and all of its rights (whether derivatively or directly), *inter alia*, with respect to the avoidance of any prepetition avoidable transfers and/or reclassification of any secured claims as equity interest.

obviously conflicted positions. As such, an active, vigilant and engaged Committee is paramount in order to effectively advance the interests of its constituency.

2. However, the Debtor has steadfastly refused to allow the Committee inside the tent to understand the inner financial and operational workings of the Debtor. When the Debtor does provide information to the Committee, it is only when faced with Committee's intention to seek court intervention to compel production of documents that are *routinely* provided to creditors' committees in chapter 11 cases. To this date, the Debtor still refuses to allow Debtor's proposed financial advisor, FTI Consulting, Inc. ("FTI") to speak with the Debtor's personnel to address FTI's questions with respect to the information provided by the Debtor to the Committee and to obtain a meaningful understanding of Debtor's financial performance.

3. The latest roadblock that the Debtor has thrown up is the almost unheard-of tactic of objecting to *each* of the Committee's proposed professionals in order to effectively disable the Committee at such a critical juncture in the case. The Committee requires insight into the underlying nature of the Debtor's prepetition transfers and mysterious consolidation of three companies less than two months prior to the petition date. Moreover, the Debtor's objection to the Committee Professional Applications are substantively devoid of merit and substantially based on the so called "non local" rates of FTI and Pachulski Stang Ziehl & Jones LLP ("PSZJ"). As demonstrated below, the Committee's selection of PSZJ, FTI and Streusand, Landon & Ozburn, LLP ("SLO") are consistent with applicable law in this Circuit and entirely appropriate under the circumstances of this case.

**Reply to Objection to PSZJ Application**

4. The Debtor's objections to the PSZJ Application are: (1) the Committee should require its attorneys to reduce its rates to "market" or find a less expensive firm; (2) PSZJ must provide a complete conflict check prior to being employed; and (3) approval of PSZJ is not appropriate under section 328(a) of the Bankruptcy Code.[3]

5. As an initial matter, the Debtor's complaint that the Committee should not be allowed to employ two sets of attorneys is absurd compared to the amount of professionals the Debtor has employed thus far in this case.[4] The Debtor has so far employed *seven* law firms (including four law firms retained under the guise of so-called "ordinary course professionals"). In addition, the Debtor has employed an audit accountant and tax professional, as well as multiple brokers and various "consultants" as part of its ordinary course professional application. Unlike the Committee's proposed professionals, several of these firms have obtained substantial prepetition retainers.

6. Moreover, the premise of the Debtor's argument that PSZJ "must reduce its rates to market" is incorrect as a matter of fact and law. The Supreme Court has held that the courts must determine prevailing market "lodestar" rates in order to calculate reasonable compensation.

---

[3] The basis for the Debtor's objection for employment of PSZJ under section 328(a) is unclear. Section 328(a) sets forth the terms and conditions for employment of the Debtor's and Committee's professionals, who are employed under sections 327 and 1102 of the Bankruptcy Code, respectively. In this case, the Committee's professionals are employed on an hourly basis (as opposed to a contingency basis for example) just like the Debtor's proposed attorneys, which are specifically provided under section 328(a) of the Bankruptcy Code. The Committee is aware that all professional fees in this case are subject to reasonableness standards of section 330(a) and are not attempting to pre-approve any fees in advance of any fee application hearing. However, in order to minimize the disputes before the court, so long as any order employing the Committee's professionals make clear that they are being employed on hourly basis pursuant to the terms of the application, PSZJ would consent to the deletion of section 328(a) from the order approving its employment.

[4] A chart detailing the Debtor's professionals and proposed professionals is set forth on **Exhibit A** hereto.

*Blum v. Stenson*, 465 U.S. 886, 888 (1984). The Fifth Circuit concluded that the applicable lodestar rate is equal to the number hours reasonably expended times the "prevailing hourly rate in the community for similar work." *Lawler v. Teofan, (In re Lawler)*, 807 F.2d 1207, 1211 (5th Cir. 1987). In determining the appropriate market rate comparison, courts "are not circumscribed in their analysis by arbitrary geographic limitations. The 'community' of professionals to which a bankruptcy court properly should look for comparison look is the community of lawyers capable of performing 'similar work.'" *In re ASARCO, LLC*, 2011 WL 2975716 at *20 (Bankr. S.D. Tex. July 20, 2011) (quoting *Transamerican Natural Gas Corp.v. Apata Partnership (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994)).

  7. As Judge Clark previously noted:

> This court has observed in an earlier decision that "[m]any bankruptcy cases are more regional or even national than they are local in scope, so that looking solely to the local community range of rates would impose an unnecessarily parochial cap on the case." That observation is still valid, but it is harder today to say what the scope of a case really is, because even an otherwise local case in terms of employees or business operation may be a regional case in terms of its lenders. Courts should exercise some care before denying a given player their chosen choice of counsel based solely on the location (and billing rate) of the lawyer, and imposing local rates can have just that effect.

*In re Pan Am Gen. Hosp.* LLC, 385 B.R. 855, 874 (Bankr. W.D. Tex. 2008) (quoting *In re Temple Retirement Community, Inc.*, 97 B.R. 333, 342 (Bankr. W.D. Tex 1989), and *In re El Paso Refinery, L.P.*, 257 B.R. 809, 832 (Bankr. W.D. Tex. 2000)). *See also In re Food Fast Holdings, Ltd.*, 2003 WL 23978338 (Bankr. E.D. Tex. Aug. 13, 2003) (noting that nonexclusive factors to justify the award of "non-local" hourly rates are (i) the regional or national scope of

the bankruptcy case; (ii) the unavailability of attorneys with the necessary skills in the local community; and (iii) the complexity of the bankruptcy case).

8. This is clearly not a "local" case by any stretch of the imagination. The Debtor owns and operates forty-six company-owned stores in *seven* states (Texas, Arkansas, Colorado, Louisiana, Idaho, Kansas and Missouri). *See Declaration of Creed Ford III in Support of the Debtor's Petition and First Day Motions* at 2 (emphasis added) [Docket No. 16]. The Debtor also has fifty-one franchised or licensed locations in *seventeen* states (California, Florida, Georgia, Indiana, Kentucky, Michigan, Montana, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Utah and Washington) and in *four countries* (Bahrain, Dubai, Egypt and Kuwait). *Id.* (emphasis added).

9. PSZJ has extensive national experience in representing debtors and creditors' committees in restaurant cases, including Buffet Partners, Real Mex Restaurants, Sizzler, Claim Jumper, and Friendly Ice Cream. A list of certain of PSZJ's food and restaurant representations is attached hereto as **Exhibit B.** PSZJ has substantial experience in this area and was selected by the Committee to represent it. The Committee should not be deprived of its choice of experienced counsel, especially in light of the fact that equity is out of the money in this case and unsecured creditors are the only economic constituency in the estate.

10. The Debtor's other objection to the PSZJ Application is that it has not disclosed its conflicts check with the Debtor's creditors. At the time of filing the PSZJ Application, PSZJ had not yet run the entire list of creditors holding claims against the Debtor as reflected in the

Debtor's Schedules filed on April 10, 2014 [Docket No. 70]. PSZJ has now completed its conflicts review and will file a supplemental declaration in advance of the hearing.

### Reply to Objection to FTI Application

11. The Debtor's objection to the FTI Application are: (1) the Debtor objects to employment of FTI under section 328(a) of the Bankruptcy Code; (2) FTI's rates exceed "market rates"; (3) FTI's application cannot be approved until it provides a complete conflicts check; (4) there is no showing why FTI is required to assist in reviewing the items set forth in its application because "[M]ost business bankruptcy lawyers have more than passing knowledge of financial matters"; and (5) the Debtor does not agree to the indemnification procedure in the FTI Application or reimbursement of its fees. The Committee has previously addressed the issues 1, 2 and 3 listed above in the response to the Debtor's objection to the PSZJ Application; they are equally applicable in the case of FTI, and are incorporated herein by reference.

12. FTI has extensive national experience in representing debtors, lenders and creditors' committees in restaurant cases, including Ameriking, Avado Brands, Boston Chicken, Buffet Partners, CCI Corporation, Chi Chi's, Claim Jumper, Fox & Hound, Friendly Ice Cream, Fuddruckers, Furr's Cafeterias, Perkins & Marie Callenders, Real Mex Restaurants, UNO Restaurants and VICORP. FTI has substantial experience in the restaurant industry and was selected by the Committee to represent it. The Committee should not be deprived of its choice of experienced financial advisor, especially in light of the fact that equity is out of the money in this case and unsecured creditors are the only economic constituency in the estate.

13. The Debtor's only substantive objection to the FTI application appears to be that it does not believe a financial advisor is warranted in this case. The Committee strongly disagrees. From the outset of this case, it is obvious that this estate requires at least one financial advisor.

14. Indeed, FTI has identified several areas of concern with the budget that they would like to clarify directly with the Debtor's financial officers, only to be rebuffed by the Debtor at every turn. Several of FTI's questions emanate from the assumptions used to develop the budget, while others go more to the substance of the Debtor's forecast. For example:

- What are the main operating assumptions used to build the forecast?

- What is the Debtor's same-store sales by period in the forecast compared to the most recent post-petition and prepetition periods?

- What are the margins by period and how do they compare to recent performance with respect to food, labor, and other expenses?

- Does the budget reflect any more store closures and if so, when and how many and are those closures reflected in revenue, food, labor and other expenses projected in the budget?

- Does the forecast reflect any cost savings such as rent relief or staff reductions for example, or any other key items and if so, what, when and how much?

- What trade terms, if any, are assumed, what terms is the Debtor currently getting, and what terms were they getting prepetition?

- How much is current cash versus the amount shown in the forecast?

- Is the cash balance on a book basis (i.e., accounting for checks written but not yet cleared) or a bank basis (cash in a bank account, not factoring in checks written that have not cleared)?

- What are accrued but unpaid postpetition liabilities at this time (and throughout the forecast)?

- For example, what are accrued but unpaid sales tax, utilities, wages, trade, etc. at any point in time and is the estate administratively insolvent when factoring in those expenses?

- Are the projections showing ending cash just for that period or are they cumulative?

15. In addition to obtaining a basic understanding of the Debtor's budget and cash forecast, the Committee requires FTI to assist it with several other issues that the Committee has identified with respect to the Debtor's valuation, prepetition insolvency with respect to certain transfers, and information that the Committee would require if it were to propose either its own plan of reorganization, evaluate the Debtor's plan of reorganization or conduct a potential sale of the Debtor, including:

- Evaluation of operating trends that resulted in the decline in the Debtor's EBITDA, to assess current and future performance.

- Evaluation of any forecast that will be provided by the Debtor to assess its reasonableness given recent trends. The Committee needs to determine reasonable levels of forecasted EBITDA, to determine go forward liquidity needs, debt capacity, and appropriate valuation of the business.

- Evaluation of store level performance and trends to assess the appropriateness of store closures and/or lease assumptions.

- Evaluation of strategic alternatives that maximize value for unsecured creditors, including a stand-alone plan or sale of the Debtor.

- Assess feasibility of any proposed plan of reorganization proposed by the Debtor or Committee.

- Review of weekly and monthly operating performance, including assessment of liquidity.

- Review of flow of funds and transfers related to the prepetition preferred stock repurchase that gave rise to the Insider Secured Indebtedness.

- Evaluation of solvency of the Debtor at various times in consideration of the avoidance of certain prepetition transactions.

- Assistance in the evaluation of various items related to potential insider debt recharacterization.

16. The Committee strongly disputes that this type of financial analysis can be done by lawyers, even if they have "more than passing knowledge of financial matters." *See* Debtor's objection to FTI Application ¶ 2. The Committee is entitled to select a financial advisor to assist it in maximizing recoveries to unsecured creditors. The fact that the Debtor has chosen not to engage a financial advisor makes FTI all the more important as they are the only professional in this case competent to perform the necessary financial analyses and valuations required in this case.

17. The Debtor also objects to "indemnify a professional it has not retained and whose services appear to be unnecessary, nor can it become compelled to do so." *Id.* ¶ 5. As noted above, FTI's services are clearly necessary in this case. Moreover, such procedures are not uncommon in this District. *See Xtreme Power Inc.*, Case No. 14-10096 (Bankr. W.D. Tex. February 7, 2014) (Judge Mott's order approving indemnification procedures for debtor's proposed financial advisor and investment banker); *In re TXCO Resources*, Case No. 09-51807 (Bankr. W.D. Tex. December 14, 2011) (Judge King's order approving provision indemnifying debtor's financial advisors); *In re Bosque Power Co.*, LLC, Case No. 10-60348 (Bankr. W.D. Tex. May 12, 2010) (approving indemnification arrangement for debtor's financial advisor and investment banker).

18. Moreover, the proposed indemnifications first require FTI to petition this Court for a determination that it is entitled to indemnification prior to receiving any payment, and has

the standard carve outs that preclude indemnification on account of any gross negligence, bad faith or willful misconduct.

**Reply to SLO Application**

19. The Debtor's objections to the SLO Application are: (1) SLO should not be employed under section 328; (2) SLO has not confirmed that it completed its conflict check; and (3) the Committee should not be allowed to employ two law firms. The Committee has addressed the issues set forth in items (1) and (2) above with respect to the reply to the PSZJ Application. Those arguments are equally applicable with respect to SLO and are incorporated by reference. Further, in advance of the hearing, SLO will file a supplemental affidavit with the Court confirming that its conflicts check included all creditors of the Debtor as disclosed on the Debtor's schedules on file with the Court.

20. As noted above, the Debtor has so far engaged seven law firms. The retention of SLO along with PSZJ will promote efficiencies in this case. There are certain matters arising in this case that are more efficiently resolved by SLO rather than PSZJ. These matters may include, for example, attending uncontested hearings or meetings in Austin that would otherwise require the travel of PSZJ attorneys (such as SLO's attendance of the continued meeting of creditors that transpired on May 13, 2014). Given that unsecured creditors are the parties that ultimately will bear the brunt of the administrative expenses in this estate, the Committee respectfully believes that it is in the best position to make the determination of how it chooses to advance those interests, rather than a Debtor that is conflicted by the chief executive officer's multiple positions in the Debtor's capital structure. Moreover, the grounds for the Debtor's objection to the

Committee's two law firms—duplication of efforts—are premature. The Committee reserves its rights to object to the Debtor's multiple professionals' applications for duplication of efforts between the Debtor's professionals or overstaffing matters with several attorneys where only a single attorney was warranted. But that does not warrant disqualification of the Debtor's professionals any more than it would the Committee's professionals. The Debtor will have those same rights with respect to the fees and expenses incurred by the Committee's professionals. But it is not appropriate to deny the employment of estate professionals on that a basis. The proper remedy would be disallowance of fees and expenses as warranted.

WHEREFORE, the Committee requests that the Court overrule the Debtor's objections and grant the applications to approve the PSZJ Application, the FTI Application and the SLO Application.

| | |
|---|---|
| Dated: May 21, 2014 | */s/ G. James Landon* <br> G. James Landon (TX Bar No. 24002445) <br> Seth E. Meisel (TX Bar No. 24037089) <br> Streusand, Landon & Ozburn, LLP <br> 811 Barton Springs Rd., Ste. 811 <br> Austin, Texas 78704 <br> Telephone: (512) 236-9900 <br> Facsimile: (512) 236-9904 <br> Email: landon@slollp.com <br><br> and <br><br> Bradford J. Sandler (DE Bar No. 4142) <br> Pachulski Stang Ziehl & Jones LLP <br> 919 N. Market Street, 17th Floor <br> P.O. Box 8705 <br> Wilmington, DE 19899-8705 (Courier 19801) <br> Telephone: (302) 652-4100 <br> Facsimile: (302) 652-4400 <br> Email: bsandler@pszjlaw.com <br><br> *[Proposed] Counsel to the Official Committee of Unsecured Creditors* |

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing *The Official Committee of Unsecured Creditors Omnibus Reply to (I) Objection to Application for Approval of Employment of Pachulski Stang Ziehl & Jones LLP as Counsel for The Official Committee of Unsecured Creditors Effective as of April 8, 2014; (II) Limited Objection to Application for Approval of Employment of Streusand, Landon & Ozburn, LLP as Local Counsel for The Official Committee of Unsecured Creditors; and (III) Objection to Application for Approval of Employment of FTI Consulting, Inc. as Financial Advisor for The Official Committee of Unsecured Creditors* was sent by ECF notification, electronic mail and/or first class regular mail, to the creditors and parties in interest listed on the attached Master Service List.

                                                             */s/ G. James Landon*
                                                             G. James Landon